LOCKE LORD LLP
Michael F. Perlis (SBN: 095992)
mperlis@lockelord.com
Richard Johnson (SBN: 198117)
rrjohnson@lockelord.com
Lilian M. Khanjian (SBN: 259015)
lkhanjian@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, California  90071
Telephone: 213-485-1500
Facsimile: 213-485-1200

Attorneys for Claimant-Plaintiff
FEDERAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL INSURANCE COMPANY<br>         Claimant-Plaintiff,<br><br>   vs.<br><br>CALDERA MEDICAL, INC., and DENISE M. FLANIGAN, ROSIE JEAN BATES, TAMMY L. MCILROY, BRENDA DEYO, SUSAN STONE, KIMBERLY DURHAM, ELAINE TACK, SHARON PEER, ELIZABETH BAILEY, BARBARA COE, DOREEN ESPARZA, CLARA PERELKA, PEGGY GRUBBS, CONNIE WILLIAMSON, CHRISTINE MATHEWS, KATRINA BAKER, DAWN BURNHAM, NANCY ROBERTS, GLENDA THORNE, BENELLA OLTREMARI, PHYLLIS W. BROWN, JOANNE MONGEAU, SYBIL WASHINGTON, and CELINES RAMIREZ, and all others similarly situated<br><br>         Claimants- Defendants. | CASE NO. 2:15-cv-00393-SVW-PJW<br><br>**FEDERAL INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR AN ORDER AUTHORIZING SUBSTITUTED SERVICE ON CERTAIN CLAIMANT-DEFENDANTS**<br><br>**DATE:      MARCH 9, 2015**<br>**TIME:      1:30 P.M.**<br>**DEPT:      6**<br><br>**JUDGE STEPHEN V. WILSON**<br><br>[Filed concurrently with:  Declaration of Lilian M. Khanjian and (Proposed) Order] |

NOTICE OF MOTION FOR AN ORDER AUTHORIZING SUBSTITUTED SERVICE

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 9, 2015 at 1:30 p.m. in Courtroom 6 of the above-entitled court, located at 312 N. Spring Street, Los Angeles, California 90012, Claimant-Plaintiff Federal Insurance Company ("Federal") will and hereby does move pursuant to the Federal Rules of Civil Procedure ("Rule) 4(e)(1) and 4(e)(2)(C) for an order authorizing substituted service of process of Federal's Complaint on certain Claimant-Defendants named as proposed class representatives in this action by delivering a copy of the summons and Complaint to counsel for such Claimant-Defendants. Federal has been unable to personally serve these Claimant-Defendants through other applicable means permitted by Rule 4. The Claimant-Defendants Federal seeks to serve on this basis are as follows:

1. Denise M. Flanigan
2. Rosie Jean Bates
3. Tammy L. McIlroy
4. Brenda Deyo
5. Susan Stone
6. Elaine Tack
7. Sharon Peer
8. Doreen Esparza
9. Peggy Grubbs
10. Connie Williamson
11. Christine Mathews
12. Katrina Baker
13. Dawn Burnham
14. Nancy Roberts
15. Joanne Mongeau
16. Sybil Washington

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Lilian M. Khanjian submitted herewith, and upon such other and further matters as may be presented at the time of hearing and if further made upon such matters as must or may be judicially noticed, including all pleadings and papers on file herewith.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 28 and 30, and February 2, 2015.

Dated: February 9, 2015

Respectfully submitted,

LOCKE LORD LLP


By: /s/ Lilian K. Khanjian
     Michael F. Perlis
     Richard Johnson
     Lilian M. Khanjian
*Attorneys for Claimant-Plaintiff*
FEDERAL INSURANCE COMPANY

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .................................................................................................1

II. FACTUAL BACKGROUND ................................................................................2

    A. The Claims ..................................................................................................2

    B. The Policies .................................................................................................3

    C. The Complaint .............................................................................................4

    D. Service of the Complaint .............................................................................5

    E. Meet and Confer Process .............................................................................6

III. ARGUMENT .........................................................................................................7

    A. The Court Should Appoint Counsel As Agents To Accept Service On Behalf Of Their Claimant-Defendant Clients. ........................................7

    B. The Court Can Authorize Substituted Service of Process On Defendant-Claimants Pursuant to Rule 4(e)(1) ...................................10

IV. CONCLUSION ...................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Elec. Specialty Co. v. Road & Ranch Supply, Inc.*,
    967 F.2d 309 (9th Cir. 1992) ............................................................................. 7

*Facebook, Inc. v. Banana Ads, LLC*,
    2012 WL 1038752 (N.D. Cal. 2012) ................................................................ 11

*Green Tree Financial Servicing Corp. v. Karbel*,
    22 B.R. 108 (10th Cir. BAP 1998) .................................................................... 9

*In re Focus Media Inc.*,
    387 F.3d 1077 (9th Cir. 2004) ........................................................................... 8

*In re Kalikow*
    602 F3d 82 (2nd Cir. 2010) ............................................................................... 8

*In Re Muralo Co., Inc.*,
    295 B.R. 512 (Bankr. D. N.J. 2003) .................................................................. 9

*Semler v. Klang,*
    *603 F. Supp. 2d 1211* (D. Minn. 2009) ............................................................ 8

*Thelen v. City of Elba,*
    *2009 WL 212940* (D. Minn. 2009) ................................................................... 8

*Tuttle v. Sky Bell Asset Management, LLC*,
    2011 WL 767741 (N.D. Cal. 2011) ................................................................... 7

*U.S. v. Ziegler Bolt and Parts Co.,*
    *111 F.3d 878* (Fed. Cir. 1997) .......................................................................... 8

*United Health Services, Inc. v. Meyer*,
    2013 WL 843698 (N.D. Cal. 2013) ................................................................. 11

*United States v. Davis*,
    38 F.R.D. 424 (N.D.N.Y. 1965) ........................................................................ 9

**STATE CASES**

*In re Estate of Moss*,
    204 Cal.App.4th 521 (2012) ............................................................................ 10

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

*Warner Bros. Records, Inc. v. Golden West Music Sales*,
    36 Cal.App.3d 1012 (1974) ...................................................................................... 10

**STATE STATUTES**

Cal. Code Civ. P. § 413.30 ............................................................................................ 11

Cal. Code Civ. P. § 416.90 ............................................................................................ 10

Cal. Ins. Code § 533 ....................................................................................................... 4

**FEDERAL RULES**

Fed. R. Civ. P. 4(e)(1) ......................................................................................... 2, 10, 11

Fed R. Civ. P. 4(e)(2)(C) .................................................................................. 2, 7, 9, 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Federal has brought an action in the nature of interpleader naming its insured Caldera Medical, Inc. ("Caldera") and 24 individuals as representatives of two proposed defendant classes. Given that over 2,000 claims spanning over various jurisdictions have been asserted against Caldera, with an unknown amount of future claims, seeking in excess of $1 billion, and Federal's remaining policy proceeds, total approximately $18,613,109, the interpleader with defendant classes is the ideal mechanism to protect the interests of Caldera, Federal and the various claimants.[1] Federal is informed that the policy proceeds, which deplete on an ongoing basis, are Caldera's primary source of funds from which to pay these claims.

Caldera is a California company that marketed, distributed and/or sold surgical mesh products, which eventually became the subject of numerous legal claims. The claimants, who are either litigating or have tolled their claims against Caldera, consist of women (and some men for loss of consortium related claims) who have at one point or another been implanted with one or more Caldera products that have allegedly caused injuries to these women. While reserving its rights to dispute coverage under the relevant policies, Federal has provided a complete defense to Caldera for the claims, spent over $5,000,000 in defense fees/costs and paid $1,000,000 towards settlement at Caldera's request.

Federal filed an action in the nature of interpleader to seek adjudication of the applicability of the relevant policies to the various claims, interpretation of their terms and potential distribution of the remaining limits, if any, to the claimants. Federal carefully selected the 24 women as proposed class representatives because they cover the range of products at issue and are current clients of the firms representing the largest number of claimants against Caldera. Federal was able to locate the addresses of 12 of the 24 named individuals and has, as of the filing of this motion, personally

---

[1] Other parties who are seeking indemnity from Caldera may be added as Claimant-Defendants as warranted.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

served the complaint on 8 of those 12 individuals. Despite diligent efforts, Federal has been unable to confirm the addresses of the remaining 12 individuals precluding personal service on these individuals of Federal's complaint.

Federal therefore asked counsel for the various unserved claimants to accept service of the complaint on behalf of their clients. Inasmuch as no counsel has yet agreed to accept service pursuant to Federal's request, Federal is compelled to seek court intervention. Inasmuch as the remaining policy proceeds are depleting on an ongoing basis due to Federal's defense of the Caldera claims, Federal seeks to serve all the named parties as soon as possible to move forward with the interpleader action and preserve what remains of the policy limits for eventual distribution. Once service is complete, Federal will move for class certification of the two proposed classes and a stay of the currently pending underlying claims to avoid erosion of the available remaining policy limits. Because service of process cannot otherwise be made on these Claimant-Defendants, Federal respectfully requests that this Court issue an order, pursuant to Federal Rules of Civil Procedure 4(e)(1) and 4(e)(2)(C), authorizing service of the summons and Complaint on counsel for those claimants that Federal cannot otherwise serve personally as identified in Exhibit A to the Declaration of Lilian M. Khanjian ("Khanjian Decl.") filed concurrently herewith.

## II.    FACTUAL BACKGROUND

### A.    The Claims

Caldera markets, distributes and/or sells surgical mesh products used in a variety of different functions, one of which includes a transvaginal mesh implant designed to treat pelvic organ prolapse or stress urinary incontinence. No later than October 20, 2008, the U.S. Food and Drug Administration issued a Public Health Notification regarding complications of transvaginally implanted Pelvic Organ Prolapse Mesh and Stress Urinary Incontinence Slings. This notification apparently precipitated numerous claims against Caldera and other manufacturers of such products.

To Federal's knowledge, there are currently at least 2,184 claimants who are either litigating claims (602 plaintiffs) or have entered into tolling agreements preserving claims (1,582 claimants) against Caldera alleging injuries as a result of being implanted with one or more Caldera products (collectively referred to as the "Caldera Claims"). (Khanjian Decl., ¶ 2). It is Federal's understanding that the six (6) Caldera mesh products involved in the Caldera Claims are as follows: (1) T-Sling System ("T-Sling"); (2) Desera Sling System ("Desera"); (3) Ascend Blue Pelvic Repair System ("Ascend"); (4) Hydrix XM ("Hydrix"); (5) POPmesh; and (6) Vertessa Polypropylene Mesh ("Vertessa"). (Khanjian Decl., ¶ 3).

### B.     The Policies

Federal issued Life Science Insurance Program policies, each numbered Policy No. 7499-85-32 SFO, to Caldera for the following policy periods: (1) August 1, 2008 to August 1, 2009 ("2008 Policy"); (2) August 1, 2009 to August 1, 2010 ("2009 Policy"); (3) August 1, 2010 to November 1, 2011 ("2010 Policy"); and (4) November 1, 2011 to November 1, 2012 ("2011 Policy"). (Khanjian Decl., ¶ 4). (The 2008, 2009, 2010 and 2011 Policies are collectively referred to herein as "the Policies" have been attached as Exhibits A-D, respectively, to Federal's Complaint. See Document No. 10 of the Docket.). The Policies are "claims-made" policies that afford coverage to Caldera subject to their terms and conditions. (Doc. No. 10). The Policies further provide that Federal shall have the right and duty to defend any suit against Caldera seeking damages in accordance with the Policies' terms. (Doc. No. 10). The 2008 Policy has a $10 million Limit of Liability subject to a $50,000 per occurrence deductible (subject to the Batch Clause), the 2009 Policy has a $10 million Limit subject to a $50,000 per occurrence deductible (subject to the Batch Clause), the 2010 Policy has a $10 million Limit subject to a $50,000 per event deductible, and the 2011 Policy has a $5 million Limit subject to a $75,000 per claim deductible. (Doc. No. 10).

In connection with the Caldera Claims, Federal has funded to date over $6,386,891 in defense and indemnity payments under the Policies, without having collected any deductible from Caldera. (Khanjian Decl., ¶ 5). The remaining non-exhausted portions of the Limits of Liability amount to approximately $18,613,109. (Khanjian Decl., ¶ 6). To Federal's knowledge, the overall relief sought by the claimants is in excess of $1 billion. (Khanjian Decl., ¶ 7). Caldera has indicated its limited assets would unlikely satisfy judgments or fund the defense costs as Caldera maintains its primary source of funds is its insurance policies. (Khanjian Decl., ¶ 8).

There are various coverage issues and disputes involving the Policies including, but not limited to: (1) when certain of the Caldera Claims are deemed "first made" against Caldera; (2) whether the 2008 or 2009 Policy provides coverage, if at all, for one or more of the T-Sling Claims; (3) whether the Non-T-Sling Claims are covered (if at all) under the 2010 Policy or the 2011 Policy; (4) the number, applicability and satisfaction of the deductibles under the Policies for the various Caldera Claims; and, (5) the applicability of exclusions and other policy provisions which include, but are not limited to, "prior knowledge" on the part of Caldera, the "known loss" doctrine, the "prior reported/deemed known" exception and willful conduct pursuant to Cal. Ins. Code section 533, which may preclude coverage for some or all of the Caldera Claims. (Khanjian Decl., ¶ 9). While Federal has not charged any deductible under the Policies in connection with the Caldera Claims, it has reserved the right to do so. (Khanjian Decl., ¶ 10). While it is disputed as to which policies provide coverage, if any, it is only contended that at most $25 million in coverage is potentially available from which, according to the terms of the Policies, defense costs and settlements paid must be subtracted. (Khanjian Decl., ¶ 11).

### C.   The Complaint

Given that Federal is subject to multiple, competing demands for the remaining portions of the Policies' Limits of Liability, on January 20, 2015 Federal filed an action in the nature of interpleader naming as defendants Caldera and 24

claimants individually and as class representatives of two proposed defendant classes as identified below. ((Khanjian Decl., ¶ 12, Doc. No. 1 of the Docket). Under circumstances like those here, it is not only the right of the carrier but also evidence of good faith on behalf of the carrier to interplead the funds at issue. Two mediated efforts at settlement of the Caldera Claims involving Federal have proved to be unsuccessful including a two-day session held before this Court. (Khanjian Decl., ¶ 13).

Once service of the Complaint is complete, Federal will promptly move the Court to certify the two proposed defendant classes and for a stay of the pending claims against Caldera. (Khanjian Decl., ¶ 14). Given the unique coverage issues relative to the T-Sling claims, the first proposed class consists of those individuals asserting T-Sling claims (both those claims involving only T-Slings and also those claims involving both T-Slings as well as other Caldera products), and the second class consisting of those individuals asserting non-T-Sling claims (involving one or more of Caldera's other products, but not T-Slings). (Doc. 1 of the Docket). The classes are limited to those claimants who have claims or potential claims that are subject to coverage under the Policies. (Doc. No. 1 of the Docket).

**D. Service of the Complaint**

Federal, through its efforts, was able to locate addresses for only 12 of the 24 named class representative claimants. (Khanjian Decl., ¶ 15). Immediately after filing the Complaint, Federal caused personal service on 8 of these 12 claimants. *Id*. Of the 4 claimants who have yet to be served for various reasons including what turned out to be invalid/incomplete addresses, Federal includes these claimants as part of its request to have the Complaint directed on their counsel. *Id*. Despite diligent search efforts, Federal has been unable thus far to confirm the residences of the other 12 claimants named as class representatives in order to effectuate personal service. *Id*.

Some of these individuals have common names rendering it nearly impossible to confirm the address of the particular claimants. *Id*. Federal lacks any evidence

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

identifying the state or county in which several of these individuals reside in order to narrow the scope of the results of the addresses. *Id*. For instance, the name Doreen Esparza (a claimant-defendant and proposed class representative) resulted in 256 addresses throughout the United States. *Id*. Federal cannot, as a practical matter, seek out every Doreen Esparza to determine which is the appropriate person to serve. *Id*. Federal has encountered similar issues with several of these individuals. *Id*. Each of the individuals that Federal seeks to serve by way of her attorney is a person for whom Federal has not been able to otherwise personally serve. (Khanjian Decl., ¶ 16). Exhibit A to the Khanjian Decl. identifies those individual claimants that Federal has been unable to serve. (Khanjian Decl., ¶ 17, Ex. A).

### E. Meet and Confer Process

Federal realized that expending any further resources towards its effort to locate additional addresses would be futile. (Khanjian Decl., ¶ 15). On January 28, 2015, during a two-day settlement conference in connection with the Caldera Claims, Federal's counsel, through the settlement judge and mediation facilitator, advised a representative group of claimants' counsel of the inability to serve several of the named claimants and asked counsel whether they would be willing to accept service on behalf of them. (Khanjian Decl., ¶ 18). Claimants' counsel said that they would provide a response by Friday, January 30th. *Id*. After not having heard any response from any counsel, on January 30th, Federal's counsel emailed claimants' counsel and reiterated its request to accept service and advised that, to the extent there was no response given by Monday February 2, 2015, Federal would proceed to take action with the Court. (Khanjian Decl., ¶ 19, Ex. B). The only response received to this email was from a single attorney stating that one of his clients had already been served while failing to acknowledge the request to accept service for any other client claimant. (Khanjian Decl., ¶ 20, Ex. C).

Subsequently, on Monday February 2, 2015, the mediation facilitator advised Federal's coverage counsel that claimants' counsel had thus far refused to accept

6
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

service would further respond to Federal's request regarding service on February 16, 2015. (Khanjian Decl., ¶ 21). Given that claimants' counsel had previously committed to other response times not met, the policy limits are eroding and that Federal was not certain whether claimants' counsel would respond favorably or unfavorably to the request, Federal was compelled to move forward. *Id*. Moreover, service of the Complaint must be complete before Federal can move to stay the underlying proceedings to preserve the policy proceeds and for the Court to authorize Federal to continue to make defense payments that have accrued and are accruing under the Policies. Nevertheless, if claimants' counsel indeed agree to accept service on behalf of all the named Claimant-Defendants by February 16th, Federal will withdraw the instant motion. (Khanjian Decl., ¶ 22).

### III. ARGUMENT

#### A. The Court Should Appoint Counsel As Agents To Accept Service On Behalf Of Their Claimant-Defendant Clients.

Pursuant to subsection (e)(2)(C) of Rule 4 of the Federal Rules of Civil Procedure ("Rule 4"), a plaintiff can serve a defendant individual by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." In light of its unsuccessful attempts to serve several of the Claimant-Defendants, Federal has asked counsel for the named representatives to accept service on behalf of their client defendants, but no counsel has yet agreed. Therefore, Federal requests that this Court appoint counsel as agents to accept service. The goal of Rule 4 is to "provide maximum freedom and flexibility in the procedures for giving all defendants…notice of commencement of the action and to eliminate unnecessary technicality in connection with service of process." *Elec. Specialty Co. v. Road & Ranch Supply, Inc.*, 967 F.2d 309, 314 (9th Cir. 1992).

An attorney can be an agent authorized to accept service. *Tuttle v. Sky Bell Asset Management, LLC*, 2011 WL 767741, *1 (N.D. Cal. 2011) (court permitted plaintiffs to serve defendants by effectuating service on defendants' attorney because

7

defendants could not be served through the traditional means of service). The agent's authority to receive service may be express or implied. *Semler v. Klang, 603 F. Supp. 2d 1211*, 1226 (D. Minn. 2009) (authority to accept process need not be explicit, but must either be express or implied from the type of relationship that has been established between the defendant and the alleged agent); *Thelen v. City of Elba, 2009 WL 212940*, 4 (D. Minn. 2009) (attorney had implied his authorization to accept service of process, by sending a letter to the plaintiffs, in which he told the plaintiffs in no uncertain terms that he received a copy of the Complaint, that he represented the non-Mehrkens Defendants and that the plaintiffs should not contact those Defendants either by letter or in person).

An attorney's implied authority to accept service is permissible so long as due process is satisfied. *U.S. v. Ziegler Bolt and Parts Co., 111 F.3d 878*, 881 (Fed. Cir. 1997). An attorney's activities on behalf of a client in one court may indicate implied authority to receive service of process "in integrally related litigation in another court." *In re Focus Media, Inc.*, 387 F3d 1077,1082 (9th Cir. 2004) (an attorney representing a client in bankruptcy was deemed to have implied authority to receive service of process in an adversary proceeding in the bankruptcy case to set aside a fraudulent transfer because "the totality of the circumstances" indicated the client's intent to convey such authority); *see also In re Kalikow* 602 F3d 82, 92 (2nd Cir. 2010) (defendant's active participation through its counsel in bankruptcy proceeding implicitly authorized counsel to accept service on client's behalf in related proceeding). Although these particular cases are in the context of bankruptcy court, the relevant rules are not dissimilar.[2]

Indeed, counsel can be deemed implied agents of their respective client claimants such that the court can order substituted service. As recently as January 28,

---

[2] "Despite the limited body of circuit authority, numerous bankruptcy and district court cases have held that implied authority to accept service of process is permissible…In sum, the basic concept that a party's bankruptcy attorney can be authorized impliedly to accept service of process on the client's behalf in a related adversary proceeding is neither novel nor inconsistent with general principles of agency law…The critical inquiry in evaluating an attorney's authority to receive process is, of course, whether the client acted in a manner that expressly or impliedly indicated the grant of such authority." *In re Focus Media Inc.*, 387 F.3d 1077, 1082-1084 (9th Cir. 2004).

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

2015, counsel expressly served as agents of their claimant clients at a settlement conference in connection with the underlying Caldera Claims. It was during this conference that Federal requested that counsel accept service of the instant Complaint. Moreover, the indisputable impracticability and near impossibility of serving personally each of the claimants warrants service on the claimants' attorneys as agents under Federal Rule of Civil Procedure ("Rule") 4(e)(2)(C). Based on the Model Rules of Professional Conduct, it is clear that counsel for each of the claimants has an ethical obligation to provide the Complaint to its client. By authorizing service of the Complaint on counsel, the Court can be certain that the claimants will be aware of it. Counsel are not free to ignore or withhold the Complaint from the named Claimant-Defendants.

In determining whether an attorney has been implicitly authorized to accept service on a defendant's behalf, one factor to consider is whether the defendant would receive actual knowledge of the pending action from its counsel. *United States v. Davis*, 38 F.R.D. 424, 425-26 (N.D.N.Y. 1965) (no fear that service of complaint and summons upon counsel would not be brought home to each principal). Moreover, due process is satisfied when a defendant receives notice that allows it to defend its position. *Green Tree Financial Servicing Corp. v. Karbel*, 22 B.R. 108 (10th Cir. BAP 1998). In mass tort cases in particular, courts have concluded that service on counsel representing thousands of defendants was proper and due process was served because there would not be any burden on the defendants if the counsel were served as agents, and service on counsel might be better actual notice to the defendants. *In Re Muralo Co., Inc.*, 295 B.R. 512, 520 (Bankr. D. N.J. 2003). In this case, claimants' counsel participated in two mediations seeking money from Federal, one of them after the filing of Federal's complaint.

Here, there can be no question that counsel for these claimants are in the best position to provide actual notice of the Complaint to each of their claimant clients Federal is attempting to serve. In particular, in light of the nature of these pending

9

claims, several of which are currently being litigated and all of which are the subject of ongoing settlement discussions, it is almost certain that the attorneys can relatively easily contact their clients to notify them of the complaint, as they should do pursuant to their ethical obligations, to satisfy actual notice. Therefore, Federal requests that the Court appoint claimants' counsel as agents authorized to accept service of the Complaint on behalf of Claimant-Defendants.

### B. The Court Can Authorize Substituted Service of Process On Defendant-Claimants Pursuant to Rule 4(e)(1).

Rule 4(e)(1) allows a plaintiff to serve a defendant by any method approved by the state in which the district court of the pending action is located or where service is made. In this case, California Code of Civil Procedure (CCP) sections 416.90 and 413.30 are applicable to allow Federal to effectuate service on the named claimants through their respective attorneys.

Similar to the Rule 4(e)(2)(C) analysis above, CCP 416.90 also allows service of a complaint by delivering a copy to such person authorized by the defendant to receive service of process. Courts have determined that CCP 416.90 should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant. Moreover, the analysis of whether service is proper should be resolved by considering each situation from a practical standpoint. The Judicial Council's comment to section 416.90 allows service through an agent under certain circumstances depending on the facts of the relationship and if it is highly probable that the defendant will receive actual notice. *Warner Bros. Records, Inc. v. Golden West Music Sales*, 36 Cal.App.3d 1012, 1017-18 (1974) (an agency relationship did exist between an attorney and his individual clients because the nature of the relationship made it highly probable that defendants would receive actual notice of the service of process on the attorney on their behalf, and the action was related to the attorney's representation of the clients); *In re Estate of Moss*, 204 Cal.App.4th 521, 533 (2012) (the relevant inquiry is whether it was reasonably certain

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

and highly probable that attorney would inform the client of the service of the action). CCP 413.30 also confirms the ability to serve a defendant in a manner which is "reasonably calculated to give actual notice to the party to be served". Courts have allows various methods of service including via email to constitute proper service on a defendant. *United Health Services, Inc. v. Meyer*, 2013 WL 843698 (N.D. Cal. 2013) (authorizing plaintiff to use email service under CCP section 413.30); *Facebook, Inc. v. Banana Ads, LLC*, 2012 WL 1038752 (N.D. Cal. 2012) (Court allowed a party, pursuant to Rule 4(e)(1) and CCP section 413.30, to serve defendants by email).

Here, as discussed above, there is no reason to doubt that, by delivering a copy of the Complaint to counsel for the claimants, the attorneys will notify their respective clients accordingly. While the attorneys have thus far not agreed to accept service, Federal asks the Court to order delivery of the Complaint on the attorneys to effectuate service on the Claimant-Defendants.

## IV. CONCLUSION

For the foregoing reasons, Federal respectfully requests that the Court issue an order authorizing substituted service of process on certain Claimant-Defendants named as proposed class representatives in Federal's Complaint by delivering a copy of the summons and complaint to counsel for such Claimant-Defendants that Federal has been unable to personally serve through other means, as identified in Exhibit A to the Khanjian Declaration.

Dated:  February 9, 2015

Respectfully submitted,

LOCKE LORD LLP

By: /s/ Lilian M. Khanjian
   Michael F. Perlis
   Richard Johnson
   Lilian M. Khanjian
*Attorneys for Claimant-Plaintiff*
*FEDERAL INSURANCE COMPANY*